UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASSIROU SAMB,<br><br>                Petitioner,<br><br>v.<br><br>WILLIAM P. JOYCE, IN HIS OFFICIAL CAPACITY AS DEPUTY FIELD OFFICE DIRECTOR OF NEW YORK, IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; AND PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES,<br><br>                Respondents. | Case No.<br><br>PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241<br><br>ORAL ARGUMENT REQUESTED |

## INTRODUCTION

Petitioner Bassirou Samb is a 30-year-old man from Senegal, who was, upon information and belief, released on recognizance into the United States on or around 12/01/2023. On August 1, 2025, Petitioner was forcibly arrested by the Department of Homeland Security (DHS) after attending a hearing in immigration court. Notwithstanding the fact that Petitioner had filed a timely application for asylum and the fact that the Immigration Judge had scheduled a subsequent hearing for Petitioner, immediately after leaving the Immigration Judge's courtroom, Petitioner was encircled by DHS agents without explanation and detained.

There have not been—nor have Respondents alleged any—changes since Petitioner was initially released on his own recognizance from detention into the United States. He

1

remains procedurally in *exactly* the same posture as when he was initially released: in removal proceedings before an immigration judge pursuant to Section 240 of the Immigration and Nationality Act. Moreover, there have been no changed circumstances as to whether Petitioner is a flight risk or danger to the community. On the contrary, Petitioner has established stronger ties to the community and complied with his legal obligations by attending a scheduled immigration court hearing. Upon information and belief, he has never been arrested or charged by any law enforcement entity in the United States or any other country.

Petitioner's unlawful and continued detention pursuant to DHS's indiscriminate courthouse arrest policy—without any individualized determination as to why detention is appropriate—has caused immense and ongoing harm to Petitioner, his family, and his community. Bassirou Samb brings this petition to seek immediate release.

## JURISDICTION

1. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

2. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner was properly ordered removed under 8 U.S.C. § 1225(b)(1).

3. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

4. Venue is proper because at the time of filing, Petitioner was detained at 26 Federal Plaza in New York, New York, which is within the jurisdiction of this District. *See Rumsfeld v. Padilla,* 542 U.S. 426, 441 (2004) (citing *Ex Parte Endo,* 323 U.S. 283 (1944)).[1]

5. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to her claims occurred in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

7. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as

---

[1] As of 4 pm on August 1, 2025, the ICE detainee locator showed Petitioner as detained in New York, and the Current ICE Facility as "Call Field Office."

"perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

8. Petitioner is lawfully present as an applicant for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner was detained by ICE at 290 Broadway, New York, New York 10278. He is in the custody, and under the direct control, of Respondents and their agents.

9. Respondent William P. Joyce is named in his official capacity as the Deputy Field Office Director of the New York City ICE Field Office within DHS. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. Respondent Joyce's address is New York City ICE Field Office, 26 Federal Plaza, 9th Floor, Suite 9-110, New York, New York 10278.

10. Respondent Kristi Noem is named in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove Petitioner; and as such is a custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-04855.

11. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

## STATEMENT OF FACTS

12. Petitioner is a 30-year-old citizen of Senegal. He timely sought asylum in the United States based on religion and membership to a particular social group.

13. Upon information and belief, Petitioner was released from detention on his own recognizance into the United States on or about 12/1/2023. His case was docketed with the New York City Immigration Court.

14. On 4/8/2024, Petitioner filed timely a *pro se* application for asylum with the immigration court, detailing his fear of removal to Senegal.

15. On 8/1/2025, Petitioner attended an immigration court hearing at 290 Broadway.

16. During his hearing, Petitioner was scheduled for a master calendar hearing on 10/31/2025.

17. When Petitioner left the courtroom, he was immediately apprehended by ICE officers. He was not informed why he was being arrested. Upon information and

belief, aside from the August 1, 2025 apprehension by ICE, and initial detention at the border, Petitioner has not had any contact with law enforcement since entering the United States.

## LEGAL FRAMEWORK

18. The Immigration & Nationality Act ("INA") provides for removal proceedings in the immigration court to be the "sole and exclusive" procedure for removing people from the United States, subject to a few narrow exceptions. 8 U.S.C. 1229a(a)(3).

19. "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 CFR Section 1003.14(a). To prevent confusion and streamline jurisdiction, particularly in asylum case, the INA's implementing regulations state that "[w]hen an Immigration Judge has jurisdiction over an underlying proceeding, *sole* jurisdiction over applications for asylum shall lie with the Immigration Judge." 8 CFR Section 1003.14(b) (emphasis supplied). The regulations provide clarity, not chaos, regarding the jurisdiction of immigration courts in removal proceedings.

20. The exclusivity of such proceedings is further reinforced by the fact that the means to terminate the jurisdiction of the immigration court is a motion to dismiss or terminate. As relevant here, dismissal requires a showing that [c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 CFR Section 239.2(a)(7).

21. Petitioner is currently in removal proceedings under Section 1229a, under the jurisdiction of the Immigration Court. No motion to dismiss those proceedings was made by the respondents, and his proceedings remain pending with the next court date on October 31, 2025. Accordingly, petitioner and his application for asylum remain under the sole and exclusive jurisdiction of the immigration court.

22. The Fifth Amendment requires that detention be "reasonabl[y] relat[ed]" to a valid governmental purpose. Jackson v. Indiana, 406 U.S. 715, 738 (1972). Immigration detention during the pendency of removal proceedings is authorized by statute for the purpose of mitigating flight risk and preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). A person's liberty cannot be infringed upon without "adequate procedural protections". *Id.* Non-citizens have a liberty interest in continued freedom from civil immigration confinement. See, e.g., Lopez v. Sessions, 2018 WL 2932726, at *12 (S.D.N.Y. 2018) ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.").

23. Since mid-May 2025, the DHS has been indiscriminately arresting noncitizens who attend immigration court hearings. ICE officers waiting in lobbies, hallways, and elevator wells in Immigration Court buildings arrest individuals leaving their hearings.

24. The ongoing civil arrests at immigration courts by Respondents stem from a significant change in policy and practice. On April 27, 2021, Respondents issued a memorandum titled "Civil Immigration Enforcement Actions in or near Courthouses." That memo strictly limited civil immigration enforcement in or near courthouses to four specific circumstances: (1) national security threats; (2) imminent risk of death, violence, or physical harm; (3) hot pursuit of public safety threats; or (4) imminent risk of evidence destruction in criminal cases. Moreover, absent hot pursuit, ICE could only make civil arrests of public safety threats where no safe alternative location existed or with senior-level pre-approval. The memo explicitly covered immigration courts, and one of the core

8

rationales underlying this policy was that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice."

25. This framework underwent a fundamental transformation on January 20, 2025, when Respondents rescinded the April 2021 Memo and issued new interim guidance. The guidance was finalized on May 27, 2025. In or around May 21, Respondents built upon this memo by initiating a policy of indiscriminate detentions at immigration courts around the country. No individualized custody review—considering, inter alia, pending applications for relief or other equitable factors such as age, health, or caretaking responsibilities—occurs.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1229a, AND IMPLEMENTING REGULATIONS

26. Petitioner realleges and incorporate by reference each and every allegation contained above.

27. Section 1229a of Title 8 of the U.S. Code provides that, [u]nless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."

28. Expedited removal proceedings constitute a distinct removal mechanism that operates separate from, and cannot run concurrently with, proceedings under Section 1229a. 8 U.S.C. § 1225(b)(1). Congress created limited exceptions where the two processes

meet—specifically, individuals whose removal proceedings originate as expedited removal proceedings can have their cases transferred to regular Section 1229a removal proceedings, if they satisfy various requirements to show they have a credible fear of persecution. But the reverse is not true: Congress has *not* authorized the sudden transfer, conversion, or disregard of Section 1229a immigration court proceedings into expedited removal proceedings.

29. Petitioner is in Section 1229a removal proceedings and such proceedings are ongoing. His proceedings originated as Section 1229a removal proceedings. No determination has yet been made as to whether Petitioner is to be removed from the United States in such proceedings.

30. Respondents did not even move for dismissal of Petitioner's removal proceedings. By detaining Petitioner ostensibly to initiate expedited removal proceedings while Section 1229a proceedings remain pending, Respondents have impermissibly created parallel processes that undermine Section 1229a's clear mandate for a single, coherent removal process.

**Respondents' Actions Also Violate The *Accardi* Doctrine And Respondents' Own Regulations**

31. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (agencies are required to obey their own regulations). According to their own regulations, Respondents lack the authority to force Petitioner to defend himself against removal simultaneously in two parallel removal proceedings. Governing regulations explicitly confer "sole jurisdiction" over applications for asylum on immigration judges presiding under Section 1229a removal proceedings. 8 C.F.R. § 1003.14(b). Petitioner exercised his

statutory right to apply for asylum before an immigration judge on October 28, 2024. 8 U.S.C. § 1158(a). His sudden detention and Respondents' attempt to dismiss his case and change the removal regime to which he is subject violates that right.

32. Further, according to their own regulations, Respondents cannot lawfully dismiss or move to dismiss Petitioner's proceedings absent a change in the circumstances of *his case*. See 8 C.F.R. § 239.2(a)(7).

33. There has been no change in the circumstances of his case. Despite that, Respondents' actions violate the Immigration and Nationality Act and implementing regulations.

## COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION SUBSTANTIVE DUE PROCESS

34. The allegations in the above paragraphs are re-alleged and incorporated herein.

35. Petitioner is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

36. The government's ongoing detention of Petitioner is unjustified and unlawful.

37. The goals of immigration detention are to "ensur[e] [his] appearance ... at future immigration proceedings," and to "[p]revent[] danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither goal is served by Petitioner's detention.

38.     Petitioner was detained by ICE at Immigration Court, demonstrating that there was no need for detention to ensure his presence at those proceedings. His very presence in the Immigration Court at the time of his detention demonstrated that he was willing and able to attend his immigration proceedings.

39.     Moreover, his detention jeopardizes Petitioner's ability to gather the evidence needed to equitably pursue his immigration relief.

40.     The Due Process Clause guarantees detained immigrants the right to be detained in a safe situation, free from punitive conditions of confinement. *See* U.S. Const. amend. V.

41.     Respondents' failure to adequately protect Petitioner from these punitive conditions, or release him from detention altogether, violates his due process rights.

42.     Petitioner has no adequate remedy at law, as he seeks immediate release and may be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

43.     For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

**COUNT THREE**

**VIOLATION OF THE DUE PROCESS CLAUSE
OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
PROCEDURAL DUE PROCESS**

44.     The allegations in the above paragraphs are realleged and incorporated herein.

45.     Petitioner is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

46. The Procedural Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of a protected interest without notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

47. Respondents provided Petitioner with no notice or opportunity to be heard prior to arresting and detaining him.

48. Respondents have offered Petitioner no meaningful opportunity to be heard or challenge his detention since detaining him.

49. Petitioner has no adequate remedy at law, as he seeks immediate release and may be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).]

50. Petitioner's detention thereby deprives him of his rights to Due Process under the Fifth Amendment of the United States Constitution.

## COUNT FOUR

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

51. The allegations in the above paragraphs are realleged and incorporated herein.

52. The Administrative Procedure Act prohibits agency action that is arbitrary and capricious. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

53. Respondents' courthouse arrest policy, whereby it indiscriminately detains individuals present in the U.S. for under two years irrespective of the individual circumstances in their case, is arbitrary and capricious. This campaign is the product of an abrupt shift in agency policy around courthouse arrests. In 2021, Respondents promulgated a policy against such arrests which recognized that conducting courthouse arrests may cause noncitizens to fear attending their court hearings, which in turn would negatively impact the administration of justice and the integrity of those proceedings. But in May 2025, Respondents suddenly shifted their policy—without discussing or addressing the chilling effect that animated their 2021 policy. The shift also failed to address another relevant factor: by failing to consider individualized circumstances, the policy causes individuals who pose neither danger nor flight risk to be detained.

54. Petitioner has no other adequate remedy at law.

55. By detaining Petitioner without any consideration of individualized facts and circumstances, and without explaining the reasons for their abrupt shift in policy, Respondents have violated the APA.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court grant the following:

1) Assume jurisdiction over this matter;
2) Order Respondents to show cause why the writ should not be granted within three days and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;
3) Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;

4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

5) Declare that Respondents' actions violate the Administrative Procedure Act;

6) Issue a Writ of Habeas Corpus ordering Respondents to release Bassirou Samb immediately;

7) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

8) Grant any further relief this Court deems just and proper.

Dated: New York, New York
August 2, 2025

Respectfully submitted,

PROFETA & EISENSTEIN
Attorneys for Petitioner

*Jethro M. Eisenstein*

Jethro M. Eisenstein (JE6848)
515 West End Avenue, Suite 1A
New York, New York 10024
(212) 577-6500
Jethro19@gmail.com